## William Johnson, Appellee, v. Chicago & Alton Railroad Company, Appellant.

### (Not to be reported in full.)

Appeal from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the October term, 1914. Reversed and remanded. Opinion filed April 16, 1915.

### Statement of the Case.

Action by William Johnson in case against the Chicago & Alton Railroad Company to recover damages for personal injuries alleged to have been sustained through the negligence of defendant. A jury returned a verdict in favor of plaintiff for $5,000, on which judgment was rendered, and the defendant appeals.

The negligence charged was that while the plaintiff was driving along a road beside the defendant's railroad right of way, its servants to the fright of the plaintiff's horses, rolled a large piece of timber into the highway from the top of a pile of lumber, and that their fright was increased by steam escaping into the road from an exhaust box near by, and also by a cloud of dust which settled over them from a load of crushed stone which the defendant was unloading close to the highway.

There is a serious conflict in the evidence as to the action of the plaintiff's horses during the morning before the accident. One witness testified that the team was frightened on the road to Pearl before it got near the crusher. Appellee got some lumber from a freight car at Pearl. He testified that his horses did not take fright while he was at the car. Two disinterested witnesses testified that the team was frightened and jumping as he drove away from the car. After putting the lumber in the wagon appellee drove to the depot and got two bundles of corrugated iron

roofing. One of the bunches was loose, the clamps being broken. Three witnesses testified that the horses were lunging and acted frightened from the noise made in loading the iron, while appellant testified that the team was not frightened while at the depot. Between the depot and the railroad crossing appellee stopped his team and tied the load to the wagon bed and also picked up from the road two pieces of rock, each weighing about twenty-five pounds, and put them on the top of the load, he says, to keep the load from slipping backward and forward, and appellant argues to keep it from rattling.

Appellant testified that just as the horses crossed the defendant's track that five men were standing on a pile of timber, and that they rolled a large timber, twelve or fourteen inches square and sixteen feet or more in length, off the top of the pile eight feet high, to the ground, to the front of and within five feet of the side of the near horse, which jumped against the off horse and started to run east; that a train came from the east on the main line whistling and ringing the bell; that a man was shoveling stone screenings out of a car on a nearby track and the wind blew dust across the track onto the horses, and made them run harder, and that steam was puffing out of the exhaust pipe and settling over the road, which made the horses crazy.

Appellee is corroborated as to the rolling of the timbers off the pile by the side of the horses by a witness, Knox, a cousin of appellee, who was running the friction hoist on the top of the crusher. He testified that there were two men on the lumber pile who rolled a timber to the ground as the team was passing. He is discredited, among other things, by a written statement made by him shortly after the accident, in which he said that he saw a gang of men on the pile of timbers at the crossing near the crusher and stated: "I will not say bridge men were rolling or moving tim-

bers when he came up, but they were on the pile.'' An-
other witness, Brunaugh, also testified that he was at
work in the crusher and saw Johnson with his team
approach the crossing and two of the bridge men, who
were on the pile of timbers with cant hooks, roll a
large timber off the top of the pile within five or six
feet of the left track of the wagon road, which scared
the team; but that the horses were dancing as they
approached the railroad. Neither of these witnesses
knew of the accident until they were told about it.

There were two gangs of six men each with push
cars taking timbers from these piles. These men tes-
tified they were on a pile of timbers when a team went
by and they did not roll timber off the pile, but that
they slid the timbers on skids from the pile to the
push car.

It is contended that the court erred in modifying an
instruction requested by appellant. The instruction
as given was: ''That if, on the occasion under investi-
gation, the plaintiff's team was excited, nervous, or
alarmed by reason of, and on account of, the noises
made by the articles he was carrying in his wagon, and
that while such team was in that condition the plaintiff
came upon the right of way of the defendant, on which
right of way, of the defendant, the defendant was
carrying on its own business in a proper and usual
way, and that on account of the excited condition of
said team, so caused by said noises, or by other causes
for which the defendant or its servants was not re-
sponsible, said team took fright and ran away, should
find for the defendant.''

The modifications were the insertion of the words,
''or its servants,'' and the erasure after the words
''ran away'' of the words ''on account of such proper
and usual conduct of the defendant's business in its
own right of way.''

Appellant's instruction ''E'' was modified by the
insertion of the words, ''and not from the negligent

acts of defendant or its servants as charged in the declaration.''

EDWARD DOOCY and WILLIAM MUMFORD, for appellant; WINSTON, PAYNE, STRAWN & SHAW, of counsel.

WILLIAMS & WILLIAMS and PAUL F. GROTE, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

## Abstract of the Decision.

1. RAILROADS, § 866*—*when subsequent conditions may not be shown.* Where it is alleged that the plaintiff's team of horses were frightened by a large piece of timber which was rolled from the top of a pile into a highway by the defendant's servants as the plaintiff was passing, the latter cannot show that several hours thereafter pieces of similar timber were lying beside the roadway.

2. EVIDENCE, § 101*—*when admission of incompetent testimony renders similar testimony admissible in rebuttal.* The admission without objection of incompetent testimony does not render similar testimony admissible over objection in rebuttal.

3. WITNESSES, § 209*—*scope of cross-examination.* A witness who testifies that he hitched up a team of horses shortly before they ran away cannot be cross-examined as to the condition of their harness after the accident.

4. RAILROADS, § 941*—*instructions in action for frightening horses.* An instruction in an action against a railroad company concerning the plaintiff's team of horses becoming frightened by a large piece of timber which the defendant's servants rolled into the roadway from the top of a pile of lumber, although not technically correct, *held* not to be misleading.

5. RAILROADS, § 877a*—*when negligence in frightening horses question for jury.* Whether the act of the servants of a railroad company in rolling a large piece of timber from the top of a pile into a highway as the plaintiff was driving past, was unreasonable in character, or done at such a time and under such circumstances as to constitute a wilful disregard of the plaintiff's rights, is a question for the jury.

6. RAILROADS, § 888*—*when modification of instruction proper in*

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*action for frightening horses.* The modification of an instruction requested by the defendant in an action for the plaintiff's team of horses being frightened by a large piece of timber being rolled from a pile into the highway by the defendant's servants, *held* erroneous, since it might have misled the jury to believe that the burden was on the defendant to show freedom from negligence.

## Lucinda Arkley, Administratrix, Appellee, v. William C. Niblack, Receiver, Appellant.

### (Not to be reported in full.)

Appeal from the Circuit Court of Vermilion county; the Hon. WILLIAM B. SCHOLFIELD, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed April 16, 1915. Rehearing denied May 26, 1915.

### Statement of the Case.

Action on the case brought by Lucinda Arkley, administatrix of the estate of John R. Arkley, deceased, against William C. Niblack, receiver of the Dering Coal Company, to recover damages under the Mines and Miners' Act for the death of John R. Arkley, caused by a portion of the roof of a room falling on him while he was at work as a coal miner. From a judgment rendered on a verdict in favor of the plaintiff for $5,000, the defendant appeals.

About 1:30 on the morning of May 23rd the mine examiner made an examination of the working place of deceased and found a loose rock, on which he placed a danger mark. When the deceased and his helper Moody, went to work on the morning of the 23rd, the assistant mine manager, who was the day inspector, told them about the loose rock and instructed them to fix it. They tried to get it down and removed part of it, including the part with the examiner's danger chalk